**MIDWEST MEDICAL SUPPLY CO., L.L.C., Appellant,**

**v.**

**Mark A. WINGERT, Specialty Med Care GP, L.L.C., and Specialty Med Care, L.P., Appellees.**

**No. 05–07–01645–CV.**

Court of Appeals of Texas, Dallas.

July 20, 2010.

Hilaree A. Casada, Cowles & Thompson, Monte K. Hurst, Hermes Sargent Bates, L.L.P., Dallas, TX, for Appellant.

Mark Wingert, Mansfield, TX, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

Midwest Medical Supply Co., L.L.C. filed a lawsuit for breach of contract and breach of fiduciary duty against its former employee, Mark Wingert, and for business torts against two corporate defendants related to Wingert. A jury found Wingert breached the contracts and his fiduciary duty to Midwest and awarded Midwest damages for past lost profits. After several post-verdict motions and hearings, the trial court rendered judgment on the jury's verdict. However, it denied Midwest's request for attorneys' fees, and awarded costs in part to Midwest against Wingert and in part to the corporate defendants against Midwest.

Midwest appeals the portions of the judgment denying its post-verdict motion for attorneys' fees and awarding court costs to the corporate defendants. We conclude the trial court correctly applied Missouri law to the claim for attorneys' fees and did not abuse its discretion in awarding costs. We affirm the trial court's judgment.

## BACKGROUND

Midwest, a Missouri limited liability company, is a regional distributor of

healthcare products. In November 1999, it acquired a distributor of medical products in Dallas and hired Wingert as a sales representative. On December 16, 1999, Wingert signed a non-competition agreement as well as a confidentiality/conflict of interest agreement with Midwest's local distributor. (This latter agreement is called the "Texas Agreement.") The Texas Agreement provided that it "shall be interpreted and construed according to the laws of the State of Texas."

On March 19, 2001, Wingert signed a confidentiality/conflict of interest agreement with Midwest (the "Missouri Agreement"). The Missouri Agreement provided it would be "interpreted and construed according to the laws of the State of Missouri." The Missouri Agreement is identical to the Texas Agreement except for the date of execution, the name of the employer, a sentence requiring the employee to report any conflicts of interest to the employer, and the choice of law provision.

In both the Texas Agreement and the Missouri Agreement, Wingert agreed, as a condition of continued employment: (1) not to misuse any trade secrets of Midwest; (2) not to do anything that interfered with his duties or loyalty to Midwest; (3) not to use his position with Midwest for personal advantage or gain; and (4) to remain free of conflicting business interests which would interfere with his duty to act at all times in the best lawful and ethical interest of Midwest. Neither agreement provided for the award of attorneys' fees in the event of litigation.

Midwest alleged and presented evidence at trial that beginning in 2002, while he was still employed by Midwest, Wingert took steps to form a competing business, Specialty Med Care, L.P., and began soliciting clients away from Midwest to his competing business. In late December 2002, a client notified Midwest it was canceling its contract with Midwest. Another client canceled in January 2003. Wingert's last day of employment with Midwest was January 31, 2003.

Midwest filed suit against Wingert on several theories, including breach of contract.[1] Midwest alleged Wingert breached two contracts: (1) the December 16, 1999 non-competition agreement; and (2) the Missouri Agreement. Midwest requested attorneys' fees under section 38.001 of the civil practices and remedies code. Midwest also sued the corporate defendants, Specialty Med Care GP, L.L.C. and Specialty Med Care, L.P., for misappropriation of trade secrets and tortious interference with contracts.

The jury charge asked the jury whether Wingert failed to comply with four specific paragraphs of the "Conflict of Interest Agreements," a phrase defined to refer to the Texas Agreement and the Missouri Agreement.[2] The jury found Wingert failed to comply with three of those paragraphs. The jury also found damages of over $113,000 for past lost profits resulting from Wingert's failure to comply with the

1. Wingert filed suit against Midwest the same day seeking a declaratory judgment that the covenant-not-to-compete in the non-competition agreement was not enforceable under Texas law. The parties were later realigned with Midwest as plaintiff and Wingert and the corporate defendants as defendants.

2. The charge defined the "Conflict of Interest Agreements" as referring "collectively to the two agreements titled 'Confidentiality/Conflict of Interest Agreement'—the first agreement, dated December 16, 1999, between Defendant Mark Wingert and Campbell Critical Care (Plaintiff's Exhibit No. 3), and the second agreement, dated March 19, 2001, between Defendant Mark Wingert and Plaintiff [Midwest] (Plaintiff's Exhibit No. 7).''

three paragraphs. The jury found that Midwest did not provide Wingert with confidential information during his employment, and thus found against Midwest on whether Wingert violated the non-competition agreement. In addition, the jury found against Midwest on the misappropriation of trade secrets claim against Wingert and Specialty Med Care GP, L.L.C. Midwest abandoned its tortious interference claim against Specialty Med Care, L.P.

After the verdict, Midwest filed a motion for judgment on the verdict and a motion for attorneys' fees based on the Texas statute authorizing an award of fees for breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008). Midwest attached evidence and requested over $320,000 in attorneys' fees through trial and post-verdict motions, plus conditional awards of appellate attorneys' fees. Midwest segregated about $18,000 in fees related solely to the non-compete claim, on which it did not prevail, and to tort claims, for which fees are not recoverable, and excluded that amount from its request. All other fees, it contended, represented fees for discrete legal services advancing both recoverable and non-recoverable claims and were so intertwined with the breach of contract claims they need not be segregated. *See Tony Gullo Motors, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). Midwest did not segregate fees related to the breach of and damages resulting from the Texas Agreement from those relating to the breach of and damages resulting from the Missouri Agreement.

Wingert moved for judgment notwithstanding the verdict on the breach of contract findings, arguing the Texas and Missouri Agreements were without consideration. Based on the jury's finding that Midwest did not provide him with confidential information during his employment, Wingert argued his continued employment was not sufficient consideration for a bilateral contract.

In response, Midwest cited the Missouri choice of law provision in the Missouri Agreement and argued that under "controlling Missouri law," continued employment was valid consideration for the Texas and the Missouri Agreements. (The response did not discuss the Texas choice of law provision in the Texas Agreement.) Midwest provided the trial court with Missouri case law supporting this contention. Alternatively, Midwest argued continued employment constituted valid consideration under Texas law because the contract provisions did not involve the enforceability of a covenant-not-to-compete under the business and commerce code. *See* TEX. BUS. & COM.CODE ANN. §§ 15.50–.52 (Vernon 2002 & Supp.2009).

Wingert also moved for attorneys' fees under the declaratory judgment act arguing he was successful in challenging the enforceability of the covenant-not-to-compete. He requested fees of over $120,000, and argued Midwest's attorneys' fees were grossly inflated because most of the case was about the enforceability of the non-compete agreement and other causes of action.

After a hearing, the trial court denied Wingert's motion for judgment notwithstanding the verdict. The trial court stated on the record that the court did not believe there was a conflict between Texas and Missouri law on the issue of consideration, but if there were a conflict, Missouri law applied under the choice of law provision and Missouri law was clear that continued employment is sufficient consideration for the contract.

Regarding attorneys' fees, the trial court sent a letter to the parties stating the court's opinion that Missouri law was

"likely dispositive" of Midwest's request for fees and outlining proposed conclusions of law the court believed were correct: the contract claim on which Midwest prevailed was based on the Missouri Agreement; the Missouri Agreement did not provide for attorneys' fees; the Missouri Agreement provided it would be "interpreted and construed" according to Missouri law; under Missouri law, attorneys' fees are recoverable only if the contract specifically provides for attorneys' fees; the court can take judicial notice of Missouri law on its own motion; and Midwest argued forcefully in response to Wingert's motion for judgment notwithstanding the verdict that because of the choice of law provision, the Missouri Agreement was subject to Missouri law.

After further briefing and hearings, the trial court denied both parties' motions for attorneys' fees in its final judgment. Midwest filed a request for findings of fact and conclusions of law on its motion for attorneys' fees. When the trial court failed to file written findings, Midwest filed a notice of past-due findings. The trial court did not file any findings of fact or conclusions of law.

### ISSUES ON APPEAL

■ Midwest requested a partial reporter's record and included a statement of issues on appeal. We presume the partial reporter's record designated by the parties is the entire record for purposes of reviewing the issues stated in Midwest's request for a partial record. TEX.R.APP. P. 34.6(c). Midwest raises five issues on appeal; however, the third issue—whether the trial court erred in determining that the Missouri Agreement was the only agreement upon which judgment could be based—was not included in the statement of issues for the partial reporter's record. Thus, we do not consider it. TEX.R.APP. P.

34.6(c)(1). The remaining four issues are (1) whether the trial court erred by denying Midwest's motion for attorneys' fees; (2) whether the trial court erred by determining that Missouri law applied to the issue of attorneys' fees; (3) whether a remand is necessary to determine the amount of attorneys' fees; and (4) whether the trial court erred by awarding costs to the corporate defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Midwest points out that the trial court did not file written findings of fact and conclusions of law after its initial request and subsequent reminder of past due findings. Midwest, however, states the error in not filing findings has not harmed it because the issue of entitlement to attorneys' fees is a question of law. We agree. An error in failing to file findings of fact and conclusions of law when properly requested is presumed harmful unless the record affirmatively shows the complaining party suffered no harm. *See Larry F. Smith, Inc. v. The Weber Co., Inc.,* 110 S.W.3d 611, 614 (Tex.App.-Dallas 2003, pet. denied). An appellant is harmed if, under the circumstances of the case, it must guess at the reason the trial court ruled against it. *Id.* Midwest does not have to guess at the trial court's reason for ruling against it. The attorneys' fee issue turns on the choice of law issue; Midwest is entitled to attorneys' fees if Texas law applies, but not if Missouri law applies. Similarly, whether Midwest is entitled to costs against the corporate defendants turns on whether it was the successful party under rule 131. TEX.R. CIV. P. 131. Midwest is not required to guess at the reason the trial court ruled against it. *See Larry F. Smith,* 110 S.W.3d at 614. Thus, we conclude the trial court's failure to file

written findings of fact and conclusions of law was harmless.

## ATTORNEYS' FEES

■ Under Texas law, Midwest must have a valid claim for breach of a written contract and may recover reasonable attorneys' fees in addition to that claim. Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8). Under Missouri law, Midwest may recover attorneys' fees for breach of a written contract only if the contract provides the prevailing party will be entitled to recover fees. *See Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 339–40 (Mo. App.1991) (discussing other exceptions not applicable here).

Midwest argues its first two issues together. First, it says the scope of the choice of law provision in the Missouri Agreement is narrow and does not apply to the issue of attorneys' fees. Second, it says the Missouri Agreement did not supersede the Texas Agreement because the trial court submitted both agreements to the jury and because Wingert waived the application of Missouri law to the issue of attorneys' fees.

The availability of attorneys' fees under a particular statute is a question of law and will be reviewed de novo. *See Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999). Similarly, the trial court's decision on what law to apply is a question of law and is also reviewed de novo. *See Minnesota Min. & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996); *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 534 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

■ Generally, the parties' contractual choice of law will be given effect if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the forum demands otherwise. *SAVA Gumarska in Kemijska In-*

*dustria D.D. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 314 (Tex.App.-Dallas 2004, no pet.); Restatement (Second) of Contracts § 187(1) (1971) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.").

## A. Scope of Choice of Law Provision

■ As noted earlier, under Missouri law, Midwest may recover attorneys' fees for breach of a written contract only if the contract so provides. *See Brown*, 820 S.W.2d at 339–40. The choice of law provision in the Missouri Agreement states that it shall be "interpreted and construed" according to Missouri law.

Midwest does not question the relationship of the Missouri Agreement to Missouri or that the issue of attorneys' fees could be resolved by an explicit provision of the agreement. Nor does Midwest suggest that applying Missouri law to the issue of attorneys' fees would offend a fundamental public policy of Texas. *See Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir.2004) ("Texas courts frequently deny attorney's fees if prohibited by the state law designated by contractual choice-of-law provisions."); *Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W.2d 478, 487–88 (Tex.App.-Dallas 1998, no pet.) ("We conclude the issue of attorneys' fees is a substantive part of a lawsuit and therefore should be governed by the law of the state governing the substantive issues."). Thus, ordinarily we would give effect to the parties' agreement and—in this case—apply Missouri to the issue of whether Midwest is entitled to attorneys' fees.

However, relying on *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex.1999),

Midwest argues the Missouri Agreement's choice of law provision does not apply to the recovery of attorneys's fees. In *Stier,* the supreme court concluded a Texas choice of law provision applying to the interpretation and enforcement of the injured seaman's employment contract did not entitled him to assert his tort claims for personal injury under Texas law. *Id.* at 433. The court recognized that the tort claims did "not rise or fall on the 'interpret[ation] and enforce[ment]' of any contractual provision." *Id.* This Court has reached a similar conclusion. *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.,* 223 S.W.3d 676, 684 (Tex.App.-Dallas 2007, pet. denied) (agreement providing it would be "interpreted, construed and enforced" according to Ohio law, did not require application of Ohio law to statutory and tort claims).

However, both *Stier* and *Red Roof* sought to determine whether a contractual choice of law provision determined the law applicable to non-contractual tort and statutory claims. In contrast, the issue here is whether the contractual choice of law provision determines the law applicable to the substantive issue of the recovery of attorneys' fees for breach of that contract. Thus, both *Stier* and *Red Roof* are distinguishable from this case.

Unlike the mixture of tort and statutory claims found in the cases cited by Midwest, "the attorney's fees claim here arises directly from a breach of the contract containing the choice-of-law provision." *Fairmont Supply Co. v. Hooks Industrial, Inc.,* 177 S.W.3d 529, 535 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

The court in *Fairmont* addressed the same issue we face: whether the law applicable to the recovery of attorneys' fees for breach of contract is determined by the choice of law provision in that contract. *Id.* at 534. There the contract provided

that the "validity, construction and performance" of the contract would be determined in accordance with Pennsylvania law. *Id.* Because the "award of attorney's fees is inextricably intertwined with the substantive issue of contractual liability— an issue that is undisputably governed by the choice-of-law provision," the court concluded the award of attorneys' fees was a substantive contractual issue governed by the law chosen by the parties. *Id.* at 535– 36.

A claim for attorneys' fees for breach of contract is not an independent cause of action. We have recognized that the recovery of attorneys' fees for breach of a contract is a substantive, not a procedural, issue and will be governed by the law governing the substantive issues. *Rapp Collins,* 982 S.W.2d at 487–88. There, we affirmed the denial of attorneys' fees in a breach of contract case because the contract provided that New York law controlled the substantive issues and, under New York law and the facts of the case, attorneys' fees were not recoverable. *Id.* at 487.

We conclude Midwest's claim for attorneys' fees is part of its substantive claim for breach of contract. But for Midwest's breach of contract claim, it could not assert a claim for attorneys' fees against Wingert under either Texas or Missouri law. As such, Midwest's ability to recover attorneys' fees is governed by Missouri law, which does not permit such relief when—as here—the contract does not provide for the recovery of attorneys' fees by the prevailing party. *See Brown,* 820 S.W.2d at 339–40.

**B. Superseded Contract**

Midwest recognizes the general rule that when parties enter into a second contract dealing with the same subject matter as their first contract without stat-

ing whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent. *The Courage Co., L.L.C. v. The Chemshare Corp.,* 93 S.W.3d 323, 333 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Crown W. Invs., Inc. v. Mercantile Nat. Bank at Dallas,* 504 S.W.2d 785, 789 (Tex. Civ.App.-Tyler 1974, no writ) (quoting 6 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1293, p. 198 (1962)). The two agreements in this case are identical except for the choice of law provisions. Thus, if we follow the general rule we would apply the choice of law provision in the later agreement—the Missouri Agreement—to the attorneys' fees issue.

In its second issue, however, Midwest argues the Missouri Agreement did not supersede the Texas Agreement because the trial court submitted both agreements to the jury and because Wingert waived the application of Missouri law to the issue of attorneys' fees.

### 1. Jury charge

■ The trial court's charge asked the jury to determine whether Wingert failed to comply with identical paragraphs of the "Conflict of Interest Agreements," defining that term as referring "collectively to [the Texas Agreement and the Missouri Agreement]." Midwest argues this submission treated the agreements as separately and distinctly enforceable. We disagree. Collectively does not mean separately and distinctly. The trial court submitted the factual issues of whether Wingert breached certain identical paragraphs of the two agreements. The difference in the two agreements—the choice of law provisions—did not present a fact question for the jury.

Moreover, as described above, the different choice of law provisions in the two

agreements raise a question of law for the court to resolve, not a fact question. That legal issue—which choice of law provision applied—is not affected by the trial court's submission of the fact issues to the jury here.

Additionally, regardless of whether trial court should have submitted to the jury whether Wingert breached provisions in both the Texas Agreement and the Missouri Agreement, no issue was submitted as to any fact issue that might render inapplicable the general rule described above—i.e. that the choice of law provision in the Missouri Agreement (as the later contract) prevails over the choice of law provision in Texas Agreement. *See Courage,* 93 S.W.3d at 333; *Crown W. Invs.,* 504 S.W.2d at 789. Accordingly, we reject Midwest's argument that the submission of both agreements to the jury in this case precludes application of the general rule.

### 2. Waiver

■ We also reject Midwest's argument that Wingert waived the choice of law issue by not presenting evidence of Missouri law. It was Midwest itself that first raised the application of Missouri law under the Missouri Agreement in response to Wingert's motion for judgment notwithstanding the verdict. Further, the waiver cases cited by Midwest are distinguishable because they involved situations where the court presumed the foreign law was the same as Texas absent proof the laws were different. *See, e.g., Coca–Cola Co. v. Harmar Bottling Co.,* 218 S.W.3d 671, 695–96 (Tex.2006) (Brister, J., dissenting) (when party fails to request judicial notice of law of another state "Texas courts will simply presume that the law of the other state is identical to Texas law"); *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 769–70 (Tex.App.-Corpus Christi 1999, pet. denied); *Clayton v. Newton,* 524 S.W.2d 368,

371 (Tex.App.-Fort Worth 1975, no writ). That is not the situation before us. As the trial court recognized, the court can take judicial notice of such matters at any stage of the proceedings and on its own motion. *See* TEX.R. EVID. 202. We conclude that Midwest, having raised the applicability of Missouri law, "cannot now argue that [Wingert] did not sufficiently raise the issue or that [he is] somehow estopped from asserting the application of" Missouri law. *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 418–19 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (finding no waiver where party asserting waiver itself raised the choice of law issue).

## C. Conclusion

We overrule Midwest's first two issues. Based on this ruling, we need not address Midwest's third issue concerning segregation of the amount of fees. TEX.R.APP. P. 47.1.

### AWARD OF COSTS

Midwest's fourth and final issue challenges the award of costs against it in favor of the corporate defendants. A defendant who obtains a take nothing judgment is a successful party entitled to the award of costs under rule 131. TEX.R. CIV. P. 131; *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 630 (Tex.App.-Dallas 2004, pet. denied). We review the trial court's award of costs for an abuse of discretion and absent such an abuse of discretion, we will not reverse the assessment of costs. *Mitchell*, 156 S.W.3d at 630.

The record indicates Midwest abandoned its tortious interference claim against Specialty Med Care, L.P. and the jury rejected its misappropriation of trade secrets claim against Specialty Med Care GP, L.L.C. The trial court's judgment awarded no relief to Midwest against the corporate defendants. Midwest contends, however, that because it was successful on some of its claims against Wingert, it was the successful party and entitled to recover costs from the corporate defendants. We disagree.

The only authorities cited by Midwest deal with counterclaims and off-sets against a successful plaintiff's claims. *See, e.g., Gateley v. Humphrey*, 247 S.W.2d 919, 921 (Tex.Civ.App.-Dallas 1952, no writ). The corporate defendants did not off-set a successful claim against them by Midwest, rather, they successfully defended against Midwest's claims. *See Dover Elevator Co. v. Servellon*, 876 S.W.2d 166, 169 (Tex. App.-Dallas 1993, no writ) (defendant was successful party when jury rejected plaintiff's claims against it after all other defendants settled with plaintiff).

Midwest was not successful on any of its claims against the corporate defendants. Midwest has not shown the trial court abused its discretion in awarding costs against Midwest in favor of the corporate defendants. We overrule Midwest's fourth issue.

### CONCLUSION

We have overruled each of the issues necessary to resolve this limited appeal. TEX.R.APP. P. 47.1. Accordingly, we affirm the trial court's judgment.