**FAIRMONT SUPPLY COMPANY, Appellant,**

v.

**HOOKS INDUSTRIAL, INC., Appellee.**

**Hooks Industrial, Inc., Appellant,**

v.

**Fairmont Supply Company, Appellee.**

**No. 01–03–01129–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 4, 2005.

Rehearing Overruled Sept. 2, 2005.

---

Craig H. Clendenin, The Ballard Law Firm, Houston, TX, for Appellant.

George Diaz–Arrastia, Ruth Ellen Shapiro, Andrew C. Schirrmeister, III, Schirrmeister Diaz–Arrastia, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BLAND.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this breach of contract case, the trial court awarded Hooks Industrial, Inc. ("Hooks") $1,200,000 in lost profit-damages against Fairmont Supply Company ("Fairmont"), but denied Hooks's attorney's fees claim. Both Fairmont and Hooks appeal; each raise one issue. Fairmont complains that the trial court abused its discretion in admitting the opinion testimony of Hooks's damages expert, regarding the calculation of lost-profit damages. Hooks contends that the trial court erred in concluding that Pennsylvania law governs its claim for attorney's fees.

We affirm.

## Background

Hooks and Fairmont entered into a "Strategic Distribution and Alliance Agreement" ("Alliance Agreement") by which Fairmont agreed to "use Hooks as their [sic] exclusive supplier" for all of the products defined in the contract. The Alliance Agreement remained in effect for 27 months. Hooks later discovered that Fairmont had purchased approximately $62 million worth of products from other suppliers that Fairmont was contractually required to purchase from Hooks.

Hooks sued Fairmont for breach of contract, negligent misrepresentation, and fraud, seeking to recover its lost profits for the products that Fairmont had failed to purchase as required under the Alliance Agreement. In support of its lost-profit claim, Hooks offered the opinion of its damages expert, Jeffrey Compton. Fairmont filed a pre-trial motion to exclude the expert opinion of Compton, which the trial court denied.

The jury found in Hooks's favor on its breach of contract and negligent misrepresentation claims. Hooks elected to have judgment entered on the $1,200,000 in lost-profit damages awarded by the jury for breach of contract.

The parties agreed that the trial court would decide, post-verdict, whether Hooks could recover its attorney's fees related to its breach of contract claim. The determinative issue was whether Texas law or Pennsylvania law governed. Based on a choice-of-law provision found in the Alliance Agreement, the trial court concluded that Pennsylvania law controlled whether Hooks was entitled to recover its attorney's fees. It is undisputed that Pennsylvania law generally does not allow an award of attorney's fees for breach of a contract, absent an agreement by the parties that such fees are recoverable. Fairmont and Hooks had not agreed that attorney's fees were recoverable in the event of a breach of contract. Accordingly, the trial court denied Hooks's attorney's fees request.

## Lost–Profit Award

In its sole issue, Fairmont complains that the trial court erred in admitting the opinion testimony of Compton, Hooks's damages expert. Excluding Compton's challenged testimony, Fairmont contends that no competent evidence supports the lost-profit award.

■ No dispute exists as to the appropriate formula used to determine lost profits in this case. At trial, Compton testified that lost profits are calculated by multiplying expected sales by gross profit margin, subtracting incremental expenses, and applying a discount rate. Fairmont's damages expert agreed that this was the appropriate formula to calculate lost profits. Fairmont, however, takes issue with the method that Compton used to calculate the following three formula variables: Hooks's expected sales, gross profit margin, and incremental expenses. The calculation method used by Compton to ascertain these three formula variables is termed the "yardstick approach" by the parties. Utilizing this approach, Compton projected Hooks's lost profits to be $1,684,199. In its motion to exclude, Fairmont challenged Compton's opinion testimony relating to his calculation of these formula variables based on the yardstick approach.

Compton testified that the yardstick approach is employed to calculate lost profits by analyzing the sales and profits of comparable businesses. Fairmont generally does not dispute the yardstick approach as an accounting method; rather, it argues that its application is not appropriate to determine lost profits in this case. Fairmont also takes issue with Compton's determination that a comparable business to Hooks, with regard to performance of the Alliance Agreement, would be a "manufacturer's agent." And Fairmont disputes the reliability of a survey conducted by an association of manufacturer's agents used by Compton to determine the formula variables. Specifically, Fairmont challenges the reliability of Compton's use of data from the survey to extrapolate the figures for Hooks's expected sales, gross profit margin, and incremental expenses, which Compton then used to calculate Hooks's lost profits.

■ Regardless of whether the trial court erred in admitting Compton's challenged testimony, we conclude that such error was harmless. We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Error in admitting evidence is generally harmless if the contested evidence is merely cumulative of properly admitted evidence. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990). We examine the entire record to determine whether the judgment is controlled by the evidence that should have been excluded. *Id.*

Hooks points out that, in addition to Compton's testimony regarding the yardstick method of valuation, other unobjected-to testimony was admitted that supports the jury's lost profits award. Specifically, alternate values were admitted, without objection, for the variables in the lost-profit formula.

Evidence was admitted, establishing that John Valentine, Hooks's president, had also determined the projected lost sales due to Fairmont's breach and the profitability of the Alliance Agreement had it been performed.[1] In particular, Hooks presented testimony, without objection, regarding Valentine's independent determination of Hooks's expected sales and profit margin. Valentine testified that Hooks would have made $28,070,000 in sales had Fairmont performed the Alliance Agree-

---

1. We note that "while expert opinion evidence *may* be offered to prove up the amount of lost profits, in the absence of highly technical issues, the cases do not *require* an expert's opinion to support an award of lost profits." *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 499 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

ment. Although it made no objection to this portion of Valentine's testimony before or during trial, on appeal, Fairmont contends that Valentine's expected-sales figure is unreliable because it is not based on "objective, facts, figures, or data." Despite Fairmont's contention, the record reveals that Valentine testified about the source and method that he used for determining the expected sales figure. According to Valentine, he reviewed Fairmont's sales data for the period of the contract's 27–month term. The sales data information was contained in Fairmont's "flat files," which Fairmont produced during discovery. On direct examination, Valentine gave detailed testimony about his review and analysis of Fairmont's flat files. In addition, six separate exhibits containing summaries of information found in Fairmont's flat files were admitted at trial and used to support Valentine's testimony on this point.

Without objection, Valentine also testified that, had Fairmont performed under the Alliance Agreement, Hooks's profit margin would have been 27.5 percent. Valentine explained that this profit margin was indicated by (1) pricing reviews that Hooks had performed for Fairmont during the term of the contract, (2) the few actual purchases that Fairmont had made under the Alliance Agreement, and (3) quotations that Hooks had given to Fairmont for products, which Fairmont never purchased. Valentine testified that 27.5 percent was also Hooks's historic profit margin.

Compton testified that he had determined that Hooks's "overhead" or incremental expenses historically had been 16 percent. Compton acknowledged that this was a lesser amount than he had deter-mined using the yardstick approach.[2] Fairmont made no objection to Compton's testimony on this point in the trial court and does not challenge it on appeal. Compton also testified, without objection, that the applicable discount rate was 33 percent. Fairmont's financial expert testified that he believed the appropriate discount rate was 36 percent.

From the unobjected-to evidence presented at trial, the jury could have assigned the following values to the variables in the lost-profit formula: (1) $28,070,000 for expected sales, (2) 27.5 percent for profit margin, (3) 16 percent for incremental expenses, and (4) 33 or 36 percent for the discount rate. Assuming the jury made the lost profit calculation applying these values, the jury's $1,200,000 award is within the range of the evidence.

After reviewing the record, and without deciding whether the trial court erred in admitting Compton's objected-to testimony, we conclude sufficient evidence is found in the record to render any error harmless. Compton's testimony was cumulative of other evidence admitted without objection, supporting the jury's damages award. Fairmont has failed to show that Compton's challenged testimony probably caused the rendition of an improper judgment. Thus, we hold that the trial court's ruling, even if erroneous, did not amount to harmful error. *See VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 859 (Tex.App.-Fort Worth 2001, pet. denied) (holding that error in admission of manufacturer's expert's testimony regarding loss of projected future sales was harmless because it was merely cumulative to testimony of manufacturer's president).

We overrule Fairmont's sole issue.

---

**2.** Compton testified that Hooks's incremental expenses were 30 percent using the yardstick method.

## Attorney's Fees

In its sole issue, Hooks challenges the trial court's denial of its request for attorney's fees. The trial court's ruling was based on its conclusion of law that "the issue of attorneys' fees in this case is governed by Pennsylvania law, and under Pennsylvania law, Hooks is not entitled to recover attorney's fees...." Hooks does not dispute that, under Pennsylvania law, it would not be entitled to attorney's fees for successfully prosecuting its breach of contract claim; rather, Hooks contends that the trial court erred in ruling that Pennsylvania law governs this issue. Hooks asserts that Texas law applies and that, under Texas Civil Practice and Remedies Code ("CPRC") section 38.001(8), it is entitled to attorney's fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997) (allowing recovery of attorney's fees "in addition to the amount of a valid claim" for breach of contract). Fairmont responds that the trial court properly applied Pennsylvania law pursuant to a choice-of-law provision in the Alliance Agreement. Because it is a question of law, we review the trial court's decision to apply Pennsylvania law to the attorney's fees issue de novo. *See Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 672 (Tex.2004).

The choice-of-law provision found in paragraph 21 of the Alliance Agreement reads as follows:

21. *CONTROLLING LAW*

The validity, construction and performance of this Agreement shall be determined in accordance with the internal laws of the Commonwealth of Pennsylvania applicable to agreements to be performed within that State.

Hooks characterizes the choice-of-law provision as a "narrow" one that does not encompass the issue of attorney's fees. In this regard, Hooks asserts as follows:

[The choice of law provision] does not provide broadly that Pennsylvania law governs all issues relating to or arising from the Agreement. Instead, it provides only that Pennsylvania law applies to certain limited issues: whether the Agreement was validly formed, how it should be interpreted or construed, and whether it has been properly performed or breached. The recovery of attorney's fees relates to the types of remedies available for a breach of the Agreement and to the amount of Hooks' recovery for breach. These issues are not subject to the ... choice of law provision.

In support of its position that the choice-of-law provision does not encompass the attorney's fees issue, Hooks advances the conflicts-of-law principle known as "depecage"—a process of applying the laws of different states to discrete issues within the same case. *See* Willis L.M. Reese, *Depecage: A Common Phenomenon in Choice of Law,* 73 COLUM. L.REV. 58, 73–75 (1973). We do not dispute the validity of depecage, only the appropriateness of its application to the attorney's fees issue in this case. To be sure, the following cases cited by Hooks support its position that not all claims in a case are necessarily governed by a choice-of-law provision that expressly governs only contractual matters: *Stier v. Reading & Bates Corp.,* 992 S.W.2d 423, 433 (Tex.1999) (concluding that Texas choice-of-law clause in employment agreement did not encompass tort claims for personal injury arising out of employment); *Covert Chevrolet–Oldsmobile, Inc. v. Gen. Motors Corp.,* No. 05–00–01170–CV, 2001 WL 950274, at *2–3 (Tex. App.-Dallas Aug.21, 2001, no pet.) (not designated for publication) (holding that Virginia choice-of-law clause did not apply to indemnification claims when such claims were based on Texas statutes and Texas common law and were not based on indem-

nification provision found in contract containing choice-of-law provision); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–27 (5th Cir.2003) (holding that, when agreement's choice-of-law provision stated that "[the] Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York," agreement would be construed under New York law, but that plaintiff's tort claims would be governed by Texas law).

■ Unlike the claims in the cases cited by Hooks, the attorney's fees claim here arises directly from a breach of the contract containing the choice-of-law provision. In contrast, the claims in the cases relied on by Hooks, to which the choice-of-law provisions were held not to apply, were independent causes of action and were derived from separate sources of liability, such as tort law.[3]

In *Stier*, the plaintiff, a Jones Act seaman, contended that his personal-injury claims were governed by the substantive laws of Texas, rather than federal maritime law. 992 S.W.2d at 433. In this regard, Stier relied on his employment agreement's choice-of-law provision, which read that the contract "shall be interpreted and enforced in accordance with the laws of the State of Texas." *Id.* The

Stier court concluded that the choice-of-law provision did not purport to encompass tort claims and did not entitle Stier to assert his tort claims pursuant to the substantive laws of Texas. *Id.* Citing the language of the choice-of-law provision, the *Stier* court reasoned that Stier's "claims do not rise or fall on the 'interpret[ation] and enforce[ment]' of any contractual provision." *Id.* We find the reasoning of *Stier* to be instructive.

Here, the choice-of-law provision in the Alliance Agreement expressly governs issues of contractual performance. And it is undisputed that the liability for Fairmont's contractual non-performance was governed by Pennsylvania law. Undeniably, Hooks could not assert an attorney's fees claim but for its claim against Fairmont for non-performance of the Alliance Agreement. Distinct from the subject claims in the cases that it cites, Hooks's attorney's fees claim is not an independent cause of action; rather, Hooks asserts such claim as a right derived from its successful prosecution of its breach of contract cause of action. Thus, unlike the tort claims in *Stier*, Hooks's attorney's fees claim *does* "rise or fall" on Fairmont's performance, or non-performance, of the Alliance Agreement.[4] *See id.* That is, the award of

---

**3.** In its reply brief, Hooks cites to federal cases that apply Pennsylvania law and similarly hold that claims arising from tortious conduct are not governed by the law chosen by the parties to govern the parties' contractual duties and obligations. *See Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 593, 596 (E.D.Pa. 1999); *Stone Street Servs., Inc. v. Daniels*, No. CIV. A. 00–1904, 2000 WL 1909373, at *4 (E.D.Pa. Dec.29, 2000). Hooks also cites *Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, a case in which the court held that a contractual choice of law applied to tort claims between the parties because the parties agreed that the chosen law would govern "all matters, including but not limited to,

matters of validity, construction, effect, or performance." 795 F.Supp. 151, 157 (W.D.Pa.1992).

**4.** Hooks cites to no authority in which a court has held that a choice-of-law provision does not encompass the recovery of attorney's fees for breach of contract when the choice-of-law provision expressly governs the contractual rights and duties of the parties. *Cf. Katz v. Berisford Int'l PLC*, No. 96 Civ. 8695(JGK), 2000 WL 959721, at *8 (S.D.N.Y. July 10, 2000) (concluding that law of jurisdiction named in contract's choice-of-law provision applied to attorney's fees issue even though contract did not expressly address attorney's fees issue). Although contextually different,

attorney's fees is inextricably intertwined with the substantive issue of contractual liability—an issue that is undisputably governed by the choice-of-law provision.

Such conclusion is reinforced by the realization that the parties in this case could have contractually allocated attorney's fees, if they had so chosen. Though Pennsylvania law does not statutorily allow the recovery of attorney's fees in breach of contract cases, it does permit parties to contractually allocate attorney's fees. *See Fidelity–Philadelphia Trust Co. v. Philadelphia Transp. Co.*, 404 Pa. 541, 548, 173 A.2d 109, 113 (Pa.1961) (stating that attorney's fees are recoverable "when clearly agreed to by the parties"). Here, a contractual provision governing attorney's fees is conspicuously absent. Having chosen Pennsylvania law to govern substantive issues of liability arising from nonperformance of the contract, the parties' implicit decision not to address the issue of attorney's fees indicates their expectation that Pennsylvania law would likewise apply to that issue. No indication exists that the parties intended to have Texas law apply to an isolated issue arising from the breach of the contract, such as attorney's fees. In contrast, every indication exists that the parties shaped their conduct in light of Pennsylvania law.

We conclude that attorney's fees are part of the substantive contractual issues, encompassed within the Alliance Agreement, that are governed by the law of the jurisdiction chosen by the parties: Pennsylvania.[5] *See Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W.2d 478, 487–88 (Tex. App.-Dallas 1998, no pet.) (concluding that New York law applied to issues of attorney's fees when contract provided that New York law applied to substantive issues); *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1127–28 (10th Cir.1999) (concluding that issue of attorney's fees was substantive issue controlled by law of jurisdiction designated in contract's choice-of-law provision, even though contract did not expressly address attorney's fees issue); *Katz v. Berisford Int'l PLC*, No. 96 Civ. 8695(JGK), 2000 WL 959721, at *8 (S.D.N.Y. July 10, 2000) (concluding that law of jurisdiction named in contract's choice-of-law provision applied to attorney's fees issue even though contract did not expressly address attorney's fees issue); *Atchison Casting Corp. v. Dofasco, Inc.*, No. 93–2447–JWL, 1995 WL 655183, at *8–9 (D.Kan. Oct.24, 1995) (holding that attorney's fees are substantive in nature because contract, though silent on attor-

---

we note that Fifth Circuit authority inferentially supports the conclusion that the choice-of-law provision encompasses attorney's fees. *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir.1993) (relying on *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir.1987) for proposition that choice-of-law clause governs both interpretation of contract and award of attorney's fees); *Hooper v. F.D.I.C.*, 785 F.2d 1228, 1231 (5th Cir.1986) ("Attorney's fees arising out of contract on account of the failure of the maker to perform it, are incidental to it, and arise from the express agreement of the parties and are as much a part of the controversy, or matter in dispute, as the debt itself.").

**5.** In support of its assertion that "Courts have awarded attorney's fees pursuant to Texas statute even though another jurisdiction's law governed the substantive rights of the parties," Hooks cites the following cases: *Lipschutz v. Gordon Jewelry Corp.*, 373 F.Supp. 375, 385, 389–93 (S.D.Tex.1974); *Pennwell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 763–64 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Grace v. Allen*, 407 S.W.2d 321, 325 (Tex.Civ.App.-Dallas 1966, writ ref'd n.r.e.); and *Nolen v. Rig–Time, Inc.*, 392 S.W.2d 754, 757–58 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.). Importantly, in these cases, the parties had not made a contractual choice of law. Thus, we find the authority relied on by Hooks to be inapposite.

ney's fees, provided for Canadian law to govern, tending to show that parties had shaped their conduct in light of Canadian law); *El Paso Natural Gas Co. v. Amoco Prod. Co.*, Civ. A. No. 12083, 1994 WL 728816, at *5 (Del.Ch. Dec.16, 1994) (concluding that parties made award of attorney's fees substantive contractual right by designating Texas law as governing, even though contract did not address attorney's fees).

■ We hold that the trial court properly determined that Pennsylvania law governed the issue of attorney's fees in this case.[6] We overrule Hooks's sole issue.[7]

## Conclusion

We affirm the judgment of the trial court.

---

6. Hooks further contends that *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), requires the application of Texas law because Texas has the "most significant relationship" with the Alliance Agreement. In *Duncan*, the court adopted the "most significant contacts" method for resolving conflicts of law in all cases "except those contract cases in which the parties have agreed to a valid choice of law clause." *Id.* at 421. Because we have concluded that the choice-of-law clause applies to the issue of attorney's fees, we need not engage in the "most significant contacts" analysis.

7. In its appellate brief, Hooks also contends that Texas law applies to the attorney's fees issue because the state's statutory scheme, which allows a successful breach of contract plaintiff to recover attorney's fees, is a "fundamental policy" of Texas and because Texas has a "materially greater interest in the award of attorney's fees" than does Pennsylvania. Despite Hooks's contention, we do not find in the appellate record where Hooks pre-

sented such argument to the trial court; thus, it is waived. *See* Tex.R.App. P. 33.1(a). In any event, in addressing a similar "fundamental public policy argument," the Fifth Circuit Court of Appeals concluded, "While Texas law allows attorney's fees to be awarded in breach of contract claims, they are not required by public policy. Texas courts frequently deny attorney's fees if prohibited by the state law designated by contractual choice-of-law provisions." *Smith v. EMC*, 393 F.3d 590, 597 (5th Cir.2004) (internal citation omitted). Moreover, Hooks's contention is undermined by Texas case law in which the courts have acknowledged that parties are free to adopt a more liberal (or more strict) standard for recovery of attorney's fees in their contract than is statutorily provided and that the appellate court is bound by such choice. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 417–18 (Tex.App.-Corpus Christi 2001, pet. denied); *One Call Sys., Inc. v. Houston Lighting & Power*, 936 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1996, writ denied).