**AFFIRM; and Opinion Filed April 7, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00115-CV**

**B/K SERIES INVESTORS, LLC, Appellant**
**V.**
**ECOM SERIES INVESTORS, LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-17984**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Kennedy

Following B/K Series Investors, LLC's ("BKSI") sale of an apartment project, as the manager of a fund holding an interest in same, ECOM Series Investors, LLC ("ECOM") sued BKSI for breach of contract and fraud. The trial court granted ECOM summary judgment on its breach of contract claim and judgment following a bench trial on its fraud claim. The court awarded ECOM actual damages of $2,404,884 and punitive damages of $250,000.

BKSI appeals the final judgment and, in four issues, asserts the trial court erred (1) in granting ECOM partial summary judgment on its breach of contract

claim, (2) in finding BKSI breached an implied duty of good faith and fair dealing, (3) in applying Texas law to ECOM's fraud claim, and (4) in awarding damages based on unreliable expert testimony as to the fair market value of the apartment project. We affirm the trial court's judgment on ECOM's fraud claim, the claim affording ECOM the greatest recovery. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

### I. Relationship Between the Parties and the Operative Company Agreements

BKSI is a Texas limited liability company. In 2013, BKSI formed B/K Funds Series PG, LLC ("BK Funds"), a Delaware limited liability company, as a vehicle for acquiring and improving apartment projects.

On September 25, 2013, BK Funds, along with ACRC Champions Investor LLC ("ACRC"), formed Promenade Champions Holdings, LLC ("Promenade Holdings") for the purpose of purchasing a 404-unit multifamily project in Houston known as The Promenade Champions Forest (the "Promenade Project"). The Promenade Project is the subject of the current dispute. BK Funds owned a 65.040066% interest in Promenade Holdings, and ACRC owned a 34.959934% preferred equity interest. BK Funds, managed by BKSI, served as the manager of Promenade Holdings.

–2–

At or around the same time Promenade Holdings was created, BK Funds, through BKSI, solicited an investment from ECOM, a Texas limited liability company. The investment was sought, in part, to assist BK Funds in fulfilling its payment obligation for the acquisition of the Promenade Project. ECOM agreed to contribute $8,140,000 for a majority membership interest in BK Funds.[1]

On October 16, 2013, in connection with ECOM's investment in BK Funds, the members of BK Funds entered into an amended limited liability company agreement, to be governed by and construed and interpreted in accordance with the laws of the State of Delaware (the "2013 Agreement").[2] The 2013 Agreement identified BKSI as the manager of BK Funds and gave ECOM the unilateral right, at any time and for any reason, to remove BKSI as the manager of BK Funds and to assume the management role. The agreement also prohibited BKSI, as manager, from making "any voluntary sale or conveyance of, or contractual commitment for a sale or conveyance of a Project [including the Promenade Project] . . ." without first obtaining approval of 51% of the ownership interest. In other words, the 2013 Agreement required the approval of ECOM, as the majority member, to sell or make a contractual commitment to sell the Promenade Project.

---

[1] ECOM, BKSI, and Park Gates Partners, LLC maintained ownership interests of 51.23%, 27.48%, and 21.29% respectively.

[2] The 2013 Agreement specifies that BKSI's address is 8080 N. Central Expressway Suite 1250 Dallas, Texas 75206 and ECOM's address is 13760 Noel Road, Suite 500 Dallas, Texas 75204.

–3–

In 2016, ACRC exercised its right under the Promenade Holdings' limited liability agreement to have its preferred equity interest in Promenade Holdings redeemed. To facilitate the redemption, ECOM proposed that the members of BK Funds make a pro rata capital contribution. While ECOM was willing to make such a contribution, the other members of BK Funds were not. The issue was finally resolved by ECOM agreeing to purchase ACRC's preferred equity interest for a payment of $3.5 million. In conjunction with that purchase, the members of BK Funds amended the 2013 Agreement ("2016 Amendment") to, among other things, amend the duties and restrictions placed on BKSI as the manager of BK Funds.[3]

---

[3] Section 3.3.2 of the 2016 Amendment provided in part:

Despite anything in the [2013] Agreement to the contrary, the Manager will not (and will not be entitled to) to [sic] do any of the following before the earlier of an ECOM Takeover or HC[Holding Company]/Investor [ECOM] Payoff, except with the prior written approval of ECOM and, to the extent required in the [2013] Agreement, each Member, in each case:

. . .

(D) acquire or sell any substantial assets of [BK Funds] or cause [BK Funds] to acquire or sell any substantial assets on behalf of [Promenade Holdings] unless the sale of such assets is made contingent upon the completion of a prior or contemporaneous HC/Investor Payoff.

Pursuant to the 2016 Amendment,

HC/Investor Payoff means closing and funding of a purchase of all of ECOM's membership and other interests in [Promenade Holdings] pursuant to Section 3.7 of the New [Promenade Holdings] Agreement.

Section 3.7 of the New Promenade Holdings Agreement provides, in part:

[BK Funds] shall have the right at any time to purchase all of [Promenade Holdings] interests of [ECOM] by delivering written notice to [ECOM] and paying [ECOM] within thirty days following the date of delivery of said written notice to [ECOM] (the '**Repurchase Option Consummation Period**'), a net purchase price equal to the total [ECOM] Return Limit determined as of the date the prices is paid to [ECOM].

BKSI contends section 3.3.2 of the 2016 Amendment allowed it to cause BK Funds to sell the Promenade Project without notice to or consent from ECOM because it paid off ECOM's preferred equity interest upon the completion of the sale. The trial court disagreed with BKSI's interpretation of the various agreements in granting ECOM's motion for partial summary judgment on its breach of contract claim and in its finding of fact that "[t]he 2016 Amendment was not intended by the parties to alter or eliminate [the requirement

## II. Sale of the Promenade Project

At various times from 2016 through early 2019, representatives of BKSI, including Ron Beneke, Mark Beneke, Brian Beneke and John Krieg,[4] approached ECOM seeking its approval to sell the Promenade Project. Each time, ECOM refused to approve a sale. In addition, on May 29, 2017, Ron Beneke asked ECOM to consent to the sale of the Parkgates Project, a separate project in which BK Funds had an ownership interest. ECOM was opposed to selling this project as well but, as a compromise, consented to its sale with the understanding that the Promenade Project would not be sold. In conjunction with the sale of the Parkgates Project, ECOM executed a written consent authorizing the sale.

Notwithstanding ECOM's desire to hold the Promenade Project as a longer-term investment, BKSI marketed the Promenade Project for sale and sold the property to Madera Residential ("Madera") on October 28, 2019, for the sum of $46,000,000. That afternoon, John Krieg emailed ECOM stating that the manager of Promenade Holdings elected to exercise its right to sell the Promenade Project. Prior to this email, ECOM had no notice or knowledge of the sale. ECOM notified

---

that the projects could not be sold, or even contracted to be sold, unless ECOM voted to approve such as sale], and it did not do so."

[4] Ron Beneke and John Krieg were the initial representatives of BKSI. Around July 2017, Ron Beneke was involved in an accident and his sons, Mark and Brian, took over many of the rights and responsibilities related to his position with the company. Brian Beneke is an attorney licensed to practice in Texas and at times acted as BKSI's general counsel.

BKSI that the sale of the Promenade Project was unauthorized and fraudulent and that ECOM intended to file suit against BKSI.

## III. The Lawsuit and Proceedings Leading to this Appeal

On November 7, 2019, ECOM exercised its right to remove BKSI as manager of BK Funds and appointed itself as the manager of the fund. The following day, ECOM filed suit against BKSI asserting claims of breach of contract, for selling the Promenade Project without its consent and approval, and fraud, for concealing information to induce ECOM to refrain from invoking its management takeover rights. BKSI brought a third-party action against BK Funds seeking indemnification under the 2013 Agreement.

On July 14, 2021, ECOM moved for partial summary judgment on its breach of contract claim. On September 6, 2021, the trial court rendered an Interlocutory Order Granting ECOM's Motion for Partial Summary Judgment with respect to its breach of contract claim, reserving the determination of damages at trial. The contract damages and the remaining claims were tried to the court beginning on September 21, 2021.

## IV. Evidence Presented at Trial

At trial, ECOM presented evidence establishing that, in January 2018, after Brian and Mark Beneke took over Ron Beneke's position with BKSI, and when it was apparent ECOM was not going to consent to the sale of the Promenade Project, BKSI contacted outside legal counsel in an attempt to find a way to force the sale of

the project without ECOM's knowledge and consent. It is not apparent from the record what advice was given, but it is clear that Brian Beneke, Mark Beneke, and John Krieg wanted to keep ECOM from finding out about a sale so that it would not invoke or exercise its right to remove BKSI as manager and assume the management role.

Once BKSI decided to proceed with an actual sale of the Promenade Project, without ECOM's consent, steps were taken to keep the marketing and sale of the project confidential in the hopes of avoiding an ECOM takeover. These steps included (1) directing the real estate broker to sell the project "off market," and to keep "it confidential" and "not let it get out," (2) making representations to ECOM about deferred maintenance and capital expenditures that made it appear BKSI had long-term plans for the project, and (3) sending ECOM reports, most of which contained a section entitled "Management Discussion," wherein BKSI routinely noted the most significant developments concerning the Promenade Project. The reports BKSI prepared in 2019 made no mention of a potential sale or marketing efforts to sell the project. In fact, in the September 2019 report, which was delivered to ECOM on October 11, 2019, almost two weeks before the sale was scheduled to and did close, BKSI reported about trends at the Promenade Project that "are expected to continue," how it was "diligently work[ing] to remain competitive," and provided budget numbers for November and December 2019, without reflecting any change or reduction in income or expenses, notwithstanding the anticipated sale of

–7–

Promenade Holdings' primary asset in October. As a result of BKSI's representations, ECOM believed that it was "business as usual" at the Promenade Project.

As to ECOM's assertion that it suffered damages as a result of the sale of the Promenade Project, ECOM presented evidence that BKSI's approach to selling the Promenade Project varied markedly from its earlier approach to selling the Parkgates Project and resulted in a purchase price that was below its fair market value. Stephen D. DuPlantis, MAI, a certified general real estate appraiser retained by ECOM, opined that the market value of the Promenade Project as of the closing date was $50,510,000. ECOM's representative, Bill Nabors, testified as a purported owner of the Promenade Project, ECOM having taken over the management of BK Funds, and opined that the fair market value of the property was at least in the range of $51,727,031 to $54,600,755, if not higher.

## V. Trial Court's Determination and Judgment

On December 10, 2021, the trial court rendered judgment in favor of ECOM on its fraud claim awarding it actual damages of $2,404,884[5] and punitive damages

---

[5] The trial court's findings of fact indicate that the court determined the fair market value of the Promenade Project at the time of the sale was $50,401,717, slightly less than the value ECOM's expert placed on the project, and that the court considered a loan prepayment penalty of $292,571 in calculating ECOM's damages. More particularly, subtracting the sales price of $46,000,000 from the fair market value of $50,401,717 yielded a difference of $4,401,717. That difference plus the prepayment penalty of $292,571 totaled $4,694,288. Applying ECOM's 51.23% interest in BK Funds to that number brought ECOM's damages to $2,404,884.

of $250,000.  In the alternative, the trial court rendered judgment in favor of ECOM on its breach of contract claim awarding it actual damages of $2,404,884.  The trial court also ordered that BKSI take nothing on its claim for indemnification against BK Funds.  No attorney's fees were awarded because the 2013 Agreement did not provide for such an award and no other basis existed to authorize an award of same.

At the request of BKSI, the trial court entered findings of fact and conclusions of law.  We will discuss those findings of fact and conclusions of law where relevant to the resolution of the dispositive issues presented on appeal.

## DISCUSSION

### I.    Fraud Claim and Application of Texas Law

We begin by addressing BKSI's third issue challenging the trial court's conclusions that BKSI had a duty to disclose the sale of the Promenade Project and "ECOM's fraud claim is governed by the laws of the State of Texas."  BKSI claims the trial court erred by declining to apply the 2013 Agreement's Delaware choice-of-law provision to ECOM's fraud claim because the alleged omissions arise directly from the contractual provisions of the 2013 Agreement, the injury ECOM asserts it sustained under its breach of contract and fraud claims are the same, and the fraud claim is inextricably intertwined with ECOM's breach of contract claim.  ECOM responds, asserting its fraud claim is an independent cause of action that does not fall within the scope of the 2013 Agreement's choice-of-law provision and the

–9–

economic loss rule does not preclude a recovery for fraud. Thus, claims ECOM, its fraud claim is governed by, and viable under, Texas law.

## A. Standard of Review

Determining which state's substantive law governs a particular issue is ultimately a question of law for the court to decide. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 440 (Tex. 2007). Therefore, we review the trial court's decision to apply Texas law in this case *de novo*. *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008); *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.).

## B. Bases for ECOM's Fraud Claim

We begin by considering the facts on which ECOM bases its fraud claim, as reflected in the following trial court findings of fact:

- [BKSI], through acts and omissions, intentionally kept its plans and efforts to sell the Promenade Project from ECOM so that ECOM would not exercise its contractual right to unilaterally replace [BKSI] as manager of [BK Funds] or otherwise take action to prevent the sale of the Promenade Project.

- In responding to inquiries from ECOM, [BKSI] intentionally omitted and failed to tell ECOM that the reason [BKSI] was no longer planning to perform certain repairs or improvements to the Promenade Project was because [BKSI] planned to sell the property.

- [BKSI] intentionally misrepresented and misled ECOM about the future business plans and expected financial performance for the Promenade Project.

- [BKSI's] acts and omissions were intended to make ECOM believe that it was "business as usual" at the Promenade Project, that there were no plans or efforts to sell the Promenade Project, and to induce ECOM to rely on such

–10–

misrepresentations or omissions such that it would not take steps that might lead it to either discover or prevent the sale.

- ECOM relied to its detriment upon the fraudulent acts and omissions of [BKSI].

As further support for these findings, the trial court made the following specific findings:

- In early 2019, [BKSI] informed ECOM that in excess of $1,000,000 was needed for deferred maintenance and additional capital expenditures for the Promenade Project but, due to cash shortfalls, insufficient funds were available to cover the expense.

- On April 24, 2019, ECOM inquired as to the status of the progress on the deferred maintenance issues and, rather than disclose its decision to cease making repairs and sell the Promenade Project, [BKSI] intentionally misled ECOM by providing only partial information.

- [BKSI] informed ECOM that it only spent $81,200 to address "critical capital issues;" that it did "not anticipate any critical repairs for the remainder of the year;" some items could be "addressed at a future date;" and that it planned to "hold off on" cleaning and repairing the gutters until a date "when the property schedules a full landscaping package."

- At the time it made the representations set for in the prior paragraph, [BKSI] had already made the decision and started the process to sell the Promenade Project without ECOM's knowledge or consent.

- On April 18, 2019, Mark Beneke reached out to Chris Curry, a broker with the firm of Holiday Fenoglio & Fowler ("HFF"), requesting an updated broker's opinion of value of the Promenade Project and providing financial information to him.

- Mark Beneke told Chris Curry they wanted to sell the Promenade Project "off market," and that he was adamant about keeping "it confidential" and "this not getting out."  He further instructed Mr. Curry to go only to a very small number of potential buyers to start.

- [BKSI] [] signed a listing agreement with HFF effective April 29, 2019.

–11–

- [BKSI] also provided monthly reports to ECOM in 2019, all of which failed to disclose its plans and efforts to sell the Promenade Project.

- In its monthly reports provided to ECOM, [BKSI] provided detailed information about budget variances, the balance sheet, the general ledger, vendor aging report, rent rolls, expected future expenditures, and other material information relating to the operations and performance of the Promenade Project.

- Also included in almost every report is a section entitled "Management Discussion," wherein [BKSI] routinely noted the most significant developments concerning the Promenade Project.

- The reports in 2019 made absolutely no mention of a potential sale, tours by prospective buyers, letters of intent, repairs made to ready the property for sale, or any other indications of a potential sale.

- For example, in the report covering September 2019, which was delivered on October 11, 2019 - just over two weeks before the sale was scheduled to and did close [BKSI] reported to ECOM about trends at the Promenade Project that "are expected to continue," how it was "diligently work[ing] to remain competitive," and still provided budget numbers for November and December, 2019 without reflecting any change or reduction in income or expenses for the final two months of the year.

- The budget in the reports covering August and September 2019 also included payment of the mortgage through December 31, 2019, despite [BKSI's] knowledge that the mortgage would be fully repaid in late October due to the sale of the property.

- At the time [BKSI] delivered the August and September 2019 reports to ECOM, [BKSI] knew and expected that the Promenade Project would be sold in October 2019 and that the budgets delivered to ECOM indicating continued ownership and operation after that time were inaccurate and misleading.

- [BKSI's] decision to conceal information and rush to a sale was meticulously orchestrated to keep ECOM from taking steps to prevent a sale of the Promenade Project until a date and upon terms of ECOM's choosing.

- [BKSI] admits it took steps to keep the transaction confidential from ECOM.

–12–

- Brian Beneke, Mark Beneke, and John Krieg all discussed the importance of making sure ECOM did not find out that [BKSI] was selling the Prominade Project.

- They further agreed to take steps to make certain ECOM didn't find out, including, but not limited to: (1) targeted marking of the Promenade Project to only a small, select number of prospective buyers; (2) unusually restrictive confidentiality agreements signed by potential buyers; (3) requiring potential buyers to only use the broker's debt group for financing; (4) not booking past due invoices from [the law firm of] Thompson Knight on the general ledger so that they wouldn't appear on the monthly accounts payable reports sent to ECOM[, which might have raised a red flag]; and (5) instructing the title company that closed the sale not to contact ECOM.

- [BKSI] knew that the quicker it could sell the Promenade Project, the greater the chances it could successfully close a sale without ECOM finding out.

It is in the context of these findings regarding the bases for ECOM's fraud claim that we initially consider the threshold question of whether ECOM's fraud claim falls within the scope of the 2013 Agreement's choice-of-law provision.

## C.    Contractual Choice-of-Law Provision

Section 13.5 of the 2013 Agreement, titled *Governing Law*, provides:

This LLC Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Delaware, without regard to any principles of conflicts of law that would result in the application of the laws of any other jurisdiction.

The scope of this choice-of-law provision is narrow. It does not purport to encompass all disputes between the parties or to encompass tort claims. *See Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (concluding a Texas choice-of-law provision that applied to the interpretation and enforcement of the injured seaman's employment contract did not entitle him to assert his tort claims

–13–

under Texas law because they did not rise or fall on the interpretation and enforcement of any contractual provision); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App.—Dallas 2007, pet. denied) (agreement providing it would be "interpreted, construed and enforced" according to Ohio law, did not require application of Ohio law to statutory and tort claims); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–27 (5th Cir. 2003) (holding that, when agreement's choice-of-law provision stated that "[the] Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York," agreement would be construed under New York law, but plaintiff's tort claims would be governed by Texas law).

As to BKSI's assertion that ECOM's fraud claim is inextricably intertwined with a substantive issue of contractual liability, and thus falls within the reach of the 2013 Agreement's choice-of-law provision, we disagree.[6] ECOM's fraud claim arises from BKSI's misrepresentations and misleading statements concerning the future business plans and expected financial performance for the Promenade Project,

---

[6] In making this assertion, BKSI relies on *Midwest Med. Supply Co., L.L.C. v. Wingert*, 317 S.W.3d 530, 537 (Tex. App.—Dallas 2010, no pet.), and *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 535–36 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The issue presented in those cases was whether a claim for attorney's fees was inextricably intertwined with the breach of contract claim such that it would fall within the purview of a choice-of-law provision governing the breach of contract claim. Those cases are inapposite to this case as the issue presented here does not concern an award of attorney's fees in connection with a breach of contract claim governed by a choice-of-law provision.

In addition, BKSI asserts the fact that the damages claimed for both ECOM's breach of contract and fraud claims are the same demonstrates the claims are inextricably intertwined. But Texas allows for the recovery of economic losses for fraud. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 306 (Tex. 2006); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Thus, like damages alone, does not transform ECOM's fraud claim into a breach of contract claim.

–14–

and its failure to disclose significant developments concerning the Promenade Project when it voluntarily ventured to do so.[7] ECOM's fraud claim does not rise or fall on the interpretation and enforcement of any contractual provision. Thus, the choice-of-law provision in the 2013 Agreement does not dictate the application of Delaware law to ECOM's fraud claim. Therefore, we must determine whether a conflict in laws exists, and if so, whether Texas law applies under the "most significant relationship" test. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (except when a contract with a valid choice-of-law clause applies, Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue).

### D.    Choice of Law

We review a trial court's determination as to which state's law applies and undertake a choice-of-law analysis only if a conflict of law exists that impacts the resolution of an issue. *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 (Tex. App.—Beaumont 2019, no pet.) (citing *Duncan*, 665 S.W.2d at 419).

---

[7] Article IX of the 2013 Agreement, titled "BOOKS, RECORDS AND INFORMATION; FINANCIAL MATTERS," only required BK Funds to maintain books and records and to deliver information that a Member reasonably requests for the purpose of enabling it to comply in a timely manner with any reporting or filing requirements imposed by statute, rule, regulation or otherwise. Thus, BKSI, as manager of BK Funds, was under no contractual obligation to provide monthly reports to the members. The 2016 Amendment did not amend Article IX of the 2013 Agreement. With respect to the 2016 amendment to Promenade Holdings' operating agreement, BK Funds, as manager, (1) on a monthly basis, was to provide the members a report setting forth the receipts and expenditures of the company, a current rent roll, evidence of payment of the Mortgage Loan, and statements of disbursement from any reserves or escrows held by the Mortgage Lender, (2) on a quarterly basis, was to provide the members financial statements, (3) on an annual basis, was to provide the members with a balance sheet, a capital account statement, statements of net cash flow and capital proceeds, and a profit and loss statement, and (4) from time to time, was to provide information concerning the company and its business and affairs reasonably requested by a member.

BKSI contends an actual conflict exists between the laws of Delaware and the laws of Texas with respect to ECOM's fraud claim.[8] ECOM contends no conflict exists. To the extent there may be a conflict between Delaware and Texas law that impacts the resolution of ECOM's fraud claim, we conclude, as more fully explained herein, the trial court did not err in concluding the laws of Texas, not Delaware, apply to that claim.

In determining choice-of-law issues, Texas courts apply the "most significant relationship" test outlined in sections 6 and 145 of the Restatement (Second) Conflicts of laws. *Duncan*, 665 S.W.2d at 420–21. Section 145 directs that the law of the state with the most significant relationship to the particular issue in tort should govern that issue. RESTATEMENT (SECOND) CONFLICTS OF LAWS § 145 (1971). That section lists factual matters to be considered when applying the principles of section 6 to a given case. *Id.* § 145(2). Section 6 requires us to consider the relative interests of the respective states in having their laws applied to the case.[9] *Id.* § 6. In addition

---

[8] Citing to *EZLinks Golf*, BKSI asserts that under Delaware law a fraud claim (1) is improper if it is a mirror image of a breach of contact claim, which we have determined is not the case here, and (2) fails if the damages are not separate from the breach of contract damages. *EZLinks Golf, LLC f. PCMS Datafit, Inc.*, No. N16C-07-080, 2017 WL 1312209, at *6–7 (Del. Super. Ct. Mar. 13, 2017).

[9] Under section 6, the factors to be considered include:
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,

to sections 6 and 145, the Restatement (Second) Conflicts of Laws also contains sections addressing specific torts. When a specific section of the Restatement (Second) Conflicts of Laws applies, courts are to apply that section to resolve the conflict. *Id.* § 145, cmt. a.;[10] *see also Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 358 (Tex. App.—Dallas 2004, pet. denied).

Section 148 of the Restatement (Second) Conflicts of Laws addresses claims related to the torts of fraud and misrepresentation. It provides, in relevant part, that when a plaintiff has suffered pecuniary harm as a result of its reliance on a defendant's false representations and when the plaintiff's reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied. RESTATEMENT (SECOND) CONFLICTS OF LAWS § 148(1). Thus, if the representations were made and received in the same

---

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

[10] Comment a of section 145 states that Title B (sections 146–155) "deals with particular torts to which it is possible to state rules of great precision." *Id.* § 145, cmt. a. This comment concludes that "the best way to bring precision into the field is by attempting to state specific rules for particular torts and for particular issues in tort." *Id.*

state and the plaintiff's reliance occurred in that state as well, section 148(1) creates a presumption for the application of that state's law. *See id.*; *see also Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 315 (Tex. App.—Texarkana 2004, no pet.).

We evaluate the substantive issues presented to determine which factors are to be considered in determining which state has the most significant relationship. *Duncan*, 665 S.W.2d at 421. Here, the substantive issues with respect to ECOM's fraud claim were whether BKSI knowingly and intentionally concealed from or failed to disclose pertinent information to ECOM and knowingly and intentionally misrepresented to ECOM the on-going and expected business and financial developments, initiatives, issues, decisions, and operations of the Promenade Project.

To the extent ECOM's fraud claim is based upon a failure to disclose, rather than an affirmative misrepresentation, we apply the factors listed in section 145 of the Restatement (Second) Conflicts of Laws, the general tort section. The factors under section 145 include (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, resident, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2)(a)–(d). All of these factors indicate that application of Texas law to ECOM's fraud by non-disclosure claim was proper. All of the

parties to the dispute are located in Texas, the conduct occurred in Texas, and the relationship and the subject of the dispute are located in Texas.

To the extent ECOM's fraud claim is based upon false representations, we apply section 148(1) of the Restatement (Second) Conflicts of Laws, the fraud and misrepresentation section. As stated *supra*, when a plaintiff has suffered pecuniary harm as a result of its reliance on a defendant's false representations and when the plaintiff's reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied. *Id.* § 148(1). Here, the representations were made and received in Texas and ECOM's reliance upon same occurred in Texas as well.[11] Thus, pursuant to section 148(1), Texas law is presumed to apply to ECOM's fraud claim unless Delaware has a more significant relationship under the principles of section 6 to the occurrence and the parties.

The factors to be considered under section 6(2) of the Restatement (Second) Conflicts of Law include the relevant policies of the forum and other interested states in determining the particular issue, the protection of justified expectations, the basic

---

[11] The record establishes that ECOM and BKSI maintained their principal offices or places of business in Dallas, Texas and that the Promenade Holdings' monthly operating reports were prepared at B/K Multifamily Services LLC offices located at 1320 Greenway Drive, Suite 720 Irving, Texas 75038.

policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. *Id.* § 6(2). These policies are to be evaluated according to their relative importance with respect to the particular issue.

"Frequently, it will be possible to decide a question of choice of law in tort without paying deliberate attention to the purpose sought to be achieved by the relevant tort rules of the interested state. This will be so whenever by reason of the particular circumstances one state is obviously that of the applicable law." *Id.* § 145, cmt c. Such is the case here. We note that the state where all interested persons are domiciled will usually have the greatest interest in determining the extent to which an injured party is compensated. *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 129 (Tex. App.—Dallas 2020, no pet.). Here, the interested persons are domiciled in Texas, and Texas has a strong policy interest in protecting its residents to allow for recovery of adequate compensation for torts committed against them. *Id.* at 128; *see also* RESTATEMENT (SECOND) CONFLICTS OF LAWS § 146, cmt. d. Nothing in the record demonstrates that Delaware has a more significant relationship to the occurrence and the parties at issue. Any connection this case has to Delaware is tangential at best and is the result of BK Fund being organized under the laws of the state of Delaware. Consequently, Delaware has only a minimal interest in having its law apply to the fraud claim and Texas has a considerable interest in having its law apply. *See, e.g.*, *GW Equity LLC v. Xcentric Ventures LLC*, 3:07-CV-976-O,

2009 WL 10704331, at *3 (N.D. Tex. Mar. 25, 2009). Thus, Texas has the most significant relationship to ECOM's fraud claim. Consequently, the trial court did not err in concluding Texas law applies to ECOM's fraud claim.

## E.     Duty to Disclose

BKSI contends that, even under Texas law, the trial court erred in finding it had a duty to disclose (1) it was marketing and planning on selling the Promenade Project, (2) it was not proceeding with certain repairs or improvements to the property because of its plans to sell the property, (3) it entered into letters of intent to sell the Promenade Project, (4) it contracted to sell the Promenade Project, and (5) it expected to sell the Promenade Project before the end of October 2019, because there was no evidence of an extra-contractual duty to disclose. The existence of a duty to disclose is a matter of law for the court to decide. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001); *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied). A duty to disclose may arise (1) when the parties have a confidential or fiduciary relationship,[12] (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or

---

[12] The 2013 Agreement disclaimed a fiduciary relationship of the parties except for those specifically set forth in the agreement. Section 1101(c) of the Delaware Limited Liability Act empowers the drafters of a limited liability company to expand, restrict, or eliminate a member or manager's duties, including fiduciary duties. DEL. CODE ANN. tit. 6, § 1101(c).

–21–

untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019); *K.A. West, LLC v. GK Invs., Inc.*, No. 05-11-00617-CV, 2013 WL 5270861, at *3–4 (Tex. App.—Dallas Sept. 17, 2013, no pet.) (mem. op.).

BKSI does not dispute that it made the representations that are the bases for ECOM's fraud claim or that it failed to disclose its plan to sell the Promenade project. BKSI disclosed certain facts to ECOM regarding the Promenade Project's status and operating condition, creating the false impression that it intended to continue operating the project as a long-term investment, and thus obligated BKSI to disclose the "whole truth" concerning the project, specifically the approaching sale of the project to Madera. *Bombardier*, 572 S.W.3d at 220; *Mundheim v. Lepp*, No. 05-19-01490-CV, 2021 WL 1921122, at *5 (Tex. App.—Dallas May 13, 2021, pet. denied) (mem. op.); *see also White v. Pei*, 452 S.W.3d 527, 538 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (shareholders who informed other shareholders regarding status and operating conditions of company, but failed to disclose an asset purchase agreement, "create[ed] the impression that [the company] was a going concern, which was not true, and thus obligated [the shareholders] to disclose the 'whole truth' concerning the company, specifically the approaching sale of its assets and business . . ."). Accordingly, BKSI's challenge to the trial court's finding of a duty to disclose is without merit.

## F. Exemplary Damages

BKSI also contends the trial court erred in awarding ECOM exemplary damages based on BKSI's alleged bad faith. Exemplary damages may be awarded for fraud. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 306 (Tex. 2006). The trial court expressly found, "that ECOM is entitled to an award of exemplary damages arising from the clear and convincing evidence of [BKSI's] fraud." It did not state exemplary damages were being awarded on the basis of BKSI's bad faith. Consequently, we conclude the trial court did not err in awarding ECOM exemplary damages on its fraud claim.

We overrule BKSI's third issue challenging the trial court's findings on ECOM's fraud claim. Because ECOM's fraud claim afforded it the most favorable relief, we need not consider BKSI's first and second issues challenging the trial court's grant of summary judgment on ECOM's breach of contract claim and findings (1) the 2016 Amendment did not alter the requirement that the Promenade project could not be sold, or even contracted to be sold, unless ECOM voted to approve such as sale and (2) BKSI breached an implied duty of good faith and fair dealing. *See* TEX. R. APP. P. 47.1; *Tony Gullo*, 212 S.W.3d at 304 (party entitled to judgment on most favorable theory supported by pleadings, evidence, and judgment); *Michael Smith Custom Clothier, Inc. v. Constantini*, No. 14-09-01089-CV, 2011 WL 826350, at *6 (Tex. App.—Houston [14th Dist.] March 10, 2011, no pet.) (mem. op.) (court need not consider challenges to alternative theories of

–23–

recovery if one theory is supported). We overrule BKSI's first and second issues as moot.

## II. Damages

In its fourth issue, BKSI urges the damages awarded were based upon fundamentally unreliable expert testimony as to the fair market value of the Promenade Project at the time of the sale. In addition, BKSI asserts the trial court erred in permitting ECOM's representative, Bill Nabors, to testify as to the fair market value of the project under the "property owner rule" because, so claims BKSI, Nabors did not qualify as a property owner due to his distant role with respect to the Promenade Project and his lack of actual knowledge. ECOM contends BKSI waived its complaint regarding the testimony of Stephen DuPlantis and Nabors because it failed to timely object to their testimony pursuant to the parties' Agreed Amended Uniform Scheduling Order and stipulated to the admission of DuPlantis's report and Nabors' declaration containing their opinions as to the fair market value of the Promenade Project.

According to the scheduling order signed on January 20, 2021, "[a]ny objection or motion to exclude or limit expert testimony due to the qualification of the expert or the reliability of the opinions must be filed no later than fourteen (14) days after the close of expert discovery, or such objection is waived." BKSI failed to timely object to DuPlantis' and Nabors' testimony based on the reliability of their opinions and, therefore, has waived any such objection on appeal. *See Lone Star*

*Engine Installation Center, Inc. v. Gonzales*, No. 05-14-01616-CV, 2016 WL 2765079, at *9 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.) (trial court ordered all motions to exclude or limit expert testimony be filed by a certain date or objections would be waived. Appellants failed to timely object to witnesses' testimony as expert witnesses, and, therefore, waived objections on appeal). Because BKSI waived its complaint by failing to comply with the scheduling order, we need not determine whether BKSI's stipulation regarding the admissibility of the report and declaration likewise precludes BKSI's argument concerning the reliability of the fair market value opinions on appeal. TEX. R. APP. P. 47.1. We overrule BKSI's fourth issue.

## III. Indemnification

Finally, BKSI conditionally requests that this Court reverse the trial court's ruling on its indemnification claim against BK Funds and remand for further proceedings. BKSI's request is conditioned upon Court resolving the underlying liability issues in its favor.

Pursuant to section 11.3 of the 2013 Agreement, BKSI was not entitled to indemnification if it suffered a loss, claim, damage, liability, judgment or expense as a result of its "Material Misconduct." Under the agreement, Material Misconduct means:

> [W]ith respect to a Covered Person, gross negligence, willful misconduct, **fraud**, the commission of a felony, any misappropriation

or intentional misapplication of funds of the Company or a Subsidiary, or any material breach of an express provision of this agreements.

(emphasis added). Because we affirm the trial court's judgment on ECOM's fraud claim and fraud constitutes "Material Misconduct," obviating any right to indemnification, BKSI's conditional request is denied.

## CONCLUSION

We affirm the trial court's judgment in favor of ECOM on its fraud claim and against BKSI on its claim for indemnification.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

220115F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

B/K SERIES INVESTORS, LLC,
Appellant

No. 05-22-00115-CV V.

ECOM SERIES INVESTORS, LLC,
Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-17984.
Opinion delivered by Justice
Kennedy. Justices Carlyle and
Goldstein participating.

In accordance with this Court's opinion of this date, the trial court's judgment in favor of ECOM Series Investors, LLC on its fraud claim and against B/K Series Investors, LLC on its claim for indemnification is **AFFIRMED**.

It is **ORDERED** that appellee ECOM SERIES INVESTORS, LLC recover its costs of this appeal from appellant B/K SERIES INVESTORS, LLC.

Judgment entered this 7th day of April 2023.